IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO:

*8:17-CV-2874-T-33 AAS*

SAMANTHA L. GARRETT,

    Plaintiff,

v.

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Samantha L. Garrett, by and through her undersigned counsel, hereby sues University of South Florida Board of Trustees, and states:

**A.**   **JURISDICTION**

1.    This is an action for relief pursuant to 20 U.S.C. § 1681, et seq., the Education Amendments of 1972, commonly known and referred to hereafter as "Title IX," thus this Court has jurisdiction pursuant to 28 U.S.C § 1331.

**B.**   **VENUE**

2.    Venue is proper in this Court pursuant to 28 U.S.C. section 1391, in that the causes of action asserted herein arose and accrued in Hillsborough County, Florida, located within the Middle District of Florida.

*TPA047396*

## C. **PARTIES**

3.    Plaintiff is now, and at all material times has been, a resident of the State of Florida. Plaintiff was at all material times a female graduate student who applied to, was accepted for admission to and duly enrolled in University of South Florida in the fall semester of 2015 through the present, to pursue a doctoral degree.

4.    a.    University of South Florida is a public university of the State of Florida, maintaining its principle place of business in Hillsborough County, Florida; Defendant University of South Florida Board of Trustees is a constitutionally-created public body corporate that administers the university (hereafter "USF" or "the University") and is responsible for ensuring that the University's policies and programs are administered in compliance with the law and educational standards, including those established by Title IX.

b.    USF was at all material times an educational institution receiving federal funds, conducting an "education program or activity" within the meaning of Title IX, and is therefore subject to its terms, including prohibition against discrimination on the basis of sex in the provision of educational opportunities and administration of student discipline.

5.    USF is responsible for the actions and inactions of its employees and agents more fully described herein.

2

## D.   **FACTS PERTINENT TO ALL COUNTS**

6.     Plaintiff is a current USF student who is enrolled as a full-time, doctoral degree-seeking student, and who attends classes and related academic activities at USF's Tampa campus in Hillsborough County, Florida.

7.     Plaintiff commenced her doctoral studies at USF in August 2015; the doctoral program was then and remains small, enrolling only approximately two dozen students at any given time.

8.     Among her fellow students in the program was Andrew Thurston, who Plaintiff met and became friends with after arriving at USF.

9.     On the evening of November 12, 2016, and into the early morning hours of November 13, 2016, while Plaintiff was visiting with Andrew Thurston at his apartment near the USF campus, he committed sexual battery on her, as defined by Florida Statutes section 794.011, with use of physical force and violence; at a minimum, the offense committed by Andrew Thurston constituted a second degree felony under Florida law.

10.     Andrew Thurston committed his crimes against Plaintiff specifically in disregard of her physical resistance and repeated demands that he "stop" forcibly removing her clothes and the forcing sexual acts on her.

11.  Plaintiff was unable to succeed in her efforts to escape Mr. Thurston's criminal acts due to his substantially larger size and physical prowess as a former U.S. Marine and current "CrossFit" athlete.

12.  Plaintiff was left bruised and bleeding as a result of the attack.

13.  After he was finished raping her, Andrew Thurston refused to allow Plaintiff to leave his apartment until the morning of November 13, 2016, and otherwise intimidated her into staying and not fleeing.

14.  Subsequent to the attack, Andrew Thurston admitted to the attacks and admitted to breaching Plaintiff's trust; he claimed, in writing, to be remorseful and "sorry," referred to himself as a "monster" and "bad person" for what he did, claimed to be refraining from alcohol, and claimed to be going to therapy; moreover, Mr. Thurston offered to leave USF so as to not interfere with Plaintiff's progress.  At all pertinent times, USF had access to these admissions by Mr. Thurston.

15.  On December 5, 2016, Plaintiff confided in USF Psychology Professor Tammy Allen, about Mr. Thurston's crimes against her; in turn, Professor Allen reported the same to USF Title IX officials, including:

a.  Plaintiff's complaint to her that she has been sexually assaulted by Andrew Thurston on November 12, 2016.

4

b.     The fact that Plaintiff wanted Andrew Thurston removed from the academic program they were both enrolled in.

c.     The fact that Plaintiff was suffering from a "high degree of stress" relative to the events.

16.     On December 6, 2016, USF Title IX officials acknowledged Plaintiff's complaint of Andrew Thurston's sexual attack on her by issuing a "Title IX initial contact letter." In that letter, USF assured Plaintiff of the following, acknowledging her Title IX rights and pledging to uphold them:

a.     "USF is committed to supporting your well-being, as well as acting to ensure the safety of the campus community."

b.     "The University is committed to stopping harassment, preventing its recurrence, and working to remedy its effects."

c.     "Students have the right to be free from retaliation from any person within the University community."

d.     "The University has a zero tolerance policy regarding retaliatory harassment."

17.     As more fully set forth herein, despite its assurances, the University materially and substantially breached each of these duties in the months that followed.

18.    No later than December 9, 2016, Plaintiff confirmed to USF Title IX officials that she wanted to assert a formal complaint against Andrew Thurston for having sexually assaulted her, and she did, in fact, file a formal complaint as of that date.

19.    No later than December 9, 2016, USF Title IX officials assigned Investigator Joanna Ellwood to investigate the case.

20.    During the course of Investigator Ellwood's investigation, USF learned, *inter alia*, that:

a.    In the days following his attack, Andrew Thurston disingenuously attempted to manipulate Plaintiff into feeling sorry for him and believing that he was remorseful.

b.    In the days following his attack, Andrew Thurston had offered to drop out of USF so as to not interfere with Plaintiff's progress, though he failed to do so.

c.    On or about November 24, 2016, when Andrew Thurston learned that Plaintiff intended to report his crimes to University officials, in an effort to retaliate against and discredit Plaintiff, Mr. Thurston filed a false report with police that Plaintiff was threatening suicide in order to force a Baker Act proceeding against her and have her involuntarily committed to a locked

psychiatric facility.   Plaintiff was detained by authorities as a result, but later released as not being a threat to herself.

      d.    In the weeks following the attack, Plaintiff failed in her attempts to achieve a sense of safety while being around Andrew Thurston at events connected with their doctoral program and became socially isolated from her peers based on fear of encountering him at social and academic events.

      e.    In the weeks following the attack, Plaintiff began to struggle and fail in her academic studies.

      f.    In the weeks following the attack, Plaintiff requested that Andrew Thurston not attend academic and social events related to their doctoral program, though he refused.

      g.    In the weeks following the attack, Plaintiff was persistently tearful and grief-stricken, to the point that she was unable to complete academic assignments.

      h.    That the doctoral program Plaintiff and Andrew Thurston are part of, is a "close knit" group in which it would be impossible for Plaintiff to achieve a sense of safety and comfort with Thurston continuing to be present.

      i.    That Andrew Thurston materially lied to Investigator Ellwood about his actions against Plaintiff.

21. At the conclusion of her investigation, Joanna Ellwood concluded that there was "sufficient evidence to substantiate" that Andrew Thurston was "responsible" for violating the USF Student Code of Conduct, sections 4.14(b) and 4.14(c), by have committed "non-consensual intercourse and non-consensual sexual contact" against Plaintiff.

22. On March 9, 2017, USF's Title IX officials issued a so-called "no contact" letter to Andrew Thurston as an "interim measure" for the duration of its investigation into Plaintiff's complaint, purporting to prohibit Mr. Thurston from contacting her "in person, by telephone, email text message or other electronic means of communication, social media or through a third party." In practice, USF failed and refused to enforce it as such.

23. On March 9, 2017, the USF Office of Student Rights and Responsibilities issued notice to Plaintiff that, as a result of the investigation into her complaint, Andrew Thurston was formally charged with violating USF's Student Code of Conduct, sections 4.14(b) and 4.14(c), relative to, respectively, non-consensual sexual intercourse and non-consensual sexual contact.

24. On March 9, 2017, the USF Office of Student Rights and Responsibilities issued a written notice that the recommended sanctions for Mr. Thurston's offense, in the event he was found responsible or accepted responsibility, would be:

a. That he would have a deferred suspension through May 4, 2018, under which, he would actually suffer no period of time at all being barred from any or all portions of campus, and would expressly be allowed to continue being on campus at his will and whim.

b. That he would have to attend two meetings with the Interim Director of the Office of Student Rights and Responsibilities, Maria Zale, specifically: (i) a meeting no later than October 13, 2017, "to discuss [his] academic and personal achievements during summer and Fall [sic] semester"; and (ii) a meeting no later than April 6, 2018, "to discuss the deferred suspension."

c. That he would be "ask[ed]" to "refrain from making contact with Plaintiff by telephone, in writing, electronically, by third party, or in person both on and off campus."

d. USF gave Mr. Thurston five business days from March 9, 2017, to accept responsibility for the charges or request a formal hearing on the chargers; he opted for the former. As such, the above-described "sanctions" were the only consequence and restrictions imposed on Mr. Thurston for having forcibly raped Plaintiff and having falsely imprisoned her after doing so.

25. Plaintiff was informed in writing of the foregoing by letter dated March 20, 2017.

26.     Notwithstanding the aforesaid "no contact" request, USF permitted Mr. Thurston to continue to have regular direct contact with Plaintiff, over her strenuous and repeated objections to University Title IX officials, and for the threat of such contact to be ever present, including permitting him to:

a.      Park in the same parking lot that Plaintiff was assigned to park in.

b.      Maintain an office as a teaching assistant in the same building that Plaintiff's assigned office was in.

c.      Be on campus at the same time Plaintiff was for academic purposes, including attending classes.

d.      Attend classes that Plaintiff was enrolled in.

e.      Enter classrooms where Plaintiff was performing her duties as a teaching assistant.

f.      Attend weekly guest speaker sessions that were an academic requirement for Plaintiff's studies.

g.      Be in the same room as Plaintiff, no matter how small, at educational meetings, educational and professional conferences, and departmental social events; in fact, USF's Senior Deputy Title IX Coordinator, Crystal Coombes, described such contact between Plaintiff and her rapist as "inconsequential."

27.    Plaintiff repeatedly and specifically complained to USF Title IX and administration officials that the sanctions and restrictions imposed on Mr. Thurston were insufficient to provide her with necessary mental health comfort and safety such that she could achieve peace of mind to participate in educational opportunities and meet the requirements of her degree program.   Among her specific complaints:

a.    Despite the larger size of the overall campus, she was, and remains, regularly exposed to her rapist because they are enrolled in the same, small doctoral program, work in the same building on campus, and have to go to the same events for that program;

b.    That she has ongoing safety concerns and has had to avoid campus because of Mr. Thurston's unrestricted access to campus;

c.    That avoiding campus has deprived Plaintiff of access to educational opportunities and benefits, and has impeded her ability to meet the requirements of her teaching assistantship and otherwise made performing her duties very difficult due to experiencing overwhelming distress from his presence.

28.    Plaintiff complained in writing of deliberate, orchestrated actions by Mr. Thurston subsequent to March 2017 to approach her and be in her presence on campus, provoking flashbacks and anxiety attacks; those complaints have been ignored by USF.  Notwithstanding, USF failed and refused to honor Plaintiff's

requests for sufficient protection from daily exposure and risk of exposure to Andrew Thurston, thus leaving her in a sexually harassing atmosphere and, in fact, creating, promoting and encouraging a sexually harassing and hostile atmosphere.

29.     In direct contravention of its Title IX duties owed to Plaintiff:

a.     USF pursued and enforced a policy of "equal access," under which Andrew Thurston was and continues to be given unfettered access to educational programs and facilities that were, and remain, in the doctoral program that Plaintiff is enrolled in.

b.     USF officials, including USF's Senior Deputy Title IX Coordinator, Crystal Coombes, insisted to Plaintiff that Title IX gave her rapist, Mr. Thurston, "the right to equitable access" to educational settings, even if she was present and even if his presence deprived her of the ability to stay.

30.     Under the University's "equal access" policy, pursued and enforced by, *inter alia*, Ms. Crystal Coombes and Senior Associate General Counsel Joanne (Jodi) Adamchak, Plaintiff has been and remains forced to either endure the sexually harassing and hostile atmosphere of her rapist's presence during her doctoral program activities, or to forego, and therefore lose access, herself to the educational opportunities and benefits of her doctoral program; both of these outcomes are in direct contravention of USF's Title IX duties.

31.    In recognition of the failure of its illegal "equal access" policy, on or about March 13, 2017, a University official acknowledged in writing that Mr. Thurston's presence in the same classroom as Plaintiff warranted her having to leave the room, even when leaving was contrary to meeting her academic expectations; despite this acknowledgement, USF continued to fail to ban Mr. Thurston from Plaintiff's presence on campus.

32.    In further violation of Title IX duties, on and after April 11, 2017, Ms. Coombes expressly refused Plaintiff's reasonable requests: (a) that Andrew Thurston be required to park in a different parking lot than Plaintiff; and (b) that Andrew Thurston be banned from being in the same academic building as Plaintiff during any time that she was there.

33.    In further violation of Title IX duties, on and after April 11, 2017, Ms. Coombes expressly directed that Plaintiff either skip academic opportunities in the form of otherwise mandatory doctoral program "brown bag" lunch events based on those Andrew Thurston's major professor directed him to attend, or that she endure his presence with nothing more than a professor present for "supervision."

34.    In further violation of Title IX duties, on and after April 11, 2017, Ms. Coombes further refused to ban Andrew Thurston from campus for the forthcoming summer; instead, Ms. Coombes began to orchestrate a *de facto*

ejection of Plaintiff from campus by having her abandon a teaching assistantship in favor of an off-campus research assistant position or internship.

35.    On the same date of April 11, 2017, Crystal Coombes admitted knowing that Plaintiff was struggling academically and her grades were failing due to the impact of Mr. Thurston's crimes against her.

36.    In fact, Plaintiff continued to suffer from serious mental health decline, including chronic panic attacks, anxiety, poor concentration, hypervigilance and other debilitating conditions that harmed her academic progress and success, due to Mr. Thurston's continued presence in her academic environment and daily threat of encountering him, and USF's creation, fostering and endorsement of a sexually harassing and hostile atmosphere, proximately resulting in Plaintiff:

    a.    Being unable to attend classes and other academic activities on campus for multiple days in a row;

    b.    Being unable to attend program events that she previously enjoyed;

    c.    Being unable to complete classes, having instead to withdraw or obtain an "incomplete" mark in multiple courses; and

    d.    Being unable to be on campus to utilize facilities and attend relevant peer events, based on Mr. Thurston's presence, including accessing an

entire floor of an academic building due to his sanctioned, regular presence on that floor.

37.    USF failed and refused to honor Plaintiff's express and repeated requests for an outcome to the disciplinary process against Mr. Thurston that would provide her with complete and necessary relief from the sexually harassing, hostile and unsafe environment resulting from ongoing exposure and risk of exposure to Mr. Thurston, including her specific request that Mr. Thurston be suspended from campus until Plaintiff completed her studies to obtain her doctoral degree.

38.    Ms. Coombes expressly directed Plaintiff that she should consider withdrawing from USF based on her ongoing complaints about Mr. Thurston's presence in Plaintiff's academic environment.

39.    USF administrators also actively rejected and sought to illegally silence the ongoing concerns raised by professors in the doctoral program in which Plaintiff and Andrew Thurston are enrolled, to wit:

a.    USF's administration, including its Title IX officials, overtly rejected the express concerns raised by professors in Plaintiff's doctoral program that the sanctions and restrictions imposed on Andrew Thurston, after he was found responsible for sexually assaulting Plaintiff, were inadequate to eliminate the sexually harassing and hostile environment experienced by Plaintiff.

b.   At least one professor confirmed in writing thereafter that doctoral program professors were rejected by the USF administration in their efforts "to get increased punishments [against Mr. Thurston] and/or accommodations to make [Plaintiff's] continued experience [at USF] as pleasant as possible."

c.   At least one professor confirmed in writing that doctoral program professors were directed by the administration not to treat Andrew Thurston as "a criminal" because it would be "considered potentially discriminatory" and expose the University and the professors, individually, to lawsuits brought by Mr. Thurston.

d.   At least one professor confirmed in writing that doctoral program professors were directed that further complaints by Plaintiff about the inadequacy of USF's response to her needs could be viewed as her "attempting to retaliate against [Mr. Thurston]" and be treated as a "USF rule violation for which [Plaintiff] can get in big trouble for."

e.   At least one professor confirmed in writing a concern that he could "potentially get … in trouble as well" for continuing to object to the administration's failures to take necessary steps to redress the sexually hostile environment that Plaintiff continued to suffer from.

f.    At least one professor confirmed in writing that Mr. Thurston was allowed to continue teaching undergraduate students and conduct private meetings with individual students "alone" during office hours based on the "logic" that no other students had "expressed anything negative about him" and that what "he admitted to" doing to Plaintiff "was technically a university infraction not a legal proceeding"; as such, "the punishment for this is like any other rule violation that results in minor response."

40.    During the investigation into Andrew Thurston's crimes, Plaintiff was assigned a "victim advocate" from the USF Center for Victim Advocacy and Violence Prevention; that advocate was supposed to provide support, direction and advocacy assistance to Plaintiff during the process.

41.    a.    USF assured Plaintiff in writing that her relationship with the victim advocate was confidential, to wit, "The USF Center for Victim Advocacy and Violence Prevention assures confidentiality to all who utilize the program's services. Client names, identifying information and any disclosures will be kept confidential unless an advocate receives permission from the client to release the information to a specific third party."

b.    Plaintiff was assured in writing that her confidential relationship between with the victim advocate would only be breached without Plaintiff's permission in one of three circumstances:

17

(i)     The advocate had, "knowledge of a client's suicidal or homicidal potential";

(ii)    The advocate "suspect[ed] that child or elder abuse has occurred";

(iii)   "A judge orders the program to release information to the court."

42.    Defendant's written policy as to victim advocate confidentiality accords with Florida law, Fla. Stat. sec. 90.5035, which establishes a sexual assault counselor-victim privilege.

43.    In June 2017, as part of an effort to retaliate against Plaintiff and silence her ongoing complaints about USF's violations of her Title IX rights, USF charged Plaintiff with violating the Student Code of Conduct herself, and in August 2017 found her guilty.

44.    The charge pursued against Plaintiff by USF was the making of an allegedly illegal recording, in violation of Florida Statutes section 934.03, of a conversation had between Plaintiff, her victim advocate, and Ms. Crystal Coombes, at which the three discussed Plaintiff's ongoing complaints that she was not safe on campus from Mr. Thurston and that her Title IX rights were being violated by USF every day.

45.     In fact, any such recording would not violate Florida law for reasons that include, *inter alia*, that the meeting occurred in a public building, among public officials discussing public duties and alleged violations of law by USF, where there was no reasonable expectation of privacy, and in itself, a USF official present violated the law during the conversation.

46.     Further, such a recording would not violate the law as Plaintiff would have a right to do so under the First Amendment to the U.S. Constitution, duly protected pursuant to 42 U.S.C. § 1983; specifically, Plaintiff has the right long recognized by federal courts, "to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."

47.     USF nonetheless prosecuted Plaintiff, and further did so despite the facts known to it that:

a.     The alleged violation was innocent and the direct result of Plaintiff attempting to compensate for problems she was having concentrating in such meetings due to stress from the rape and ongoing exposure to her rapist; and

b.     No harm resulted to anyone from the alleged violation.

48.     USF improperly persisted in the charges against Plaintiff in order to retaliate against her for having complained of the University's failure to protect her and resolve the sexually hostile atmosphere caused by Andrew Thurston

49. Facts that demonstrate the retaliatory intent of the prosecution of Plaintiff include, without necessary limitation:

a. USF threatened Plaintiff with sanctions that were more severe than those imposed on Mr. Thurston for having raped her, including financial penalties and having to complete a two-part "ethics and community standards workshop" no later than July 24, 2017;

b. The charge against Plaintiff was solely derived from information improperly disclosed to USF administrators by her campus advocate, Megan Deremiah, in blatant violation of the confidentiality that was supposed to be assured in that relationship.

c. No action was taken by USF against the campus advocate for having breached the confidential relationship.

d. In the conduct board hearing on the charges, USF provided as the basis for the charges the illegally-obtained evidence from Ms. Deremiah in the form of what were supposed to be confidential communications between her and Plaintiff.

e. USF's Senior Deputy Title IX Coordinator, Crystal Coombes, demanded that the disciplinary panel deal with the charges against Plaintiff "in the strongest possible manner" and impose sanctions that "must be hard felt;" Ms. Coombes specifically related her demands to the fact that Plaintiff had been upset

with the process and outcome of Andrew Thurston's disciplinary proceedings for having sexually assaulted Plaintiff.

50.     The breach of confidentiality and retaliatory prosecution of Plaintiff by USF completely, and foreseeably, destroyed Plaintiff's trust in the victim advocate program, thereby depriving her of the support of that resource that is supposed to be an integral part of the Title IX victim support process.

51.     a.     In advance of the attack on Plaintiff by Andrew Thurston, USF failed to have in place adequate and sufficient policies and procedures that ensured a sex crime victim's on-campus needs for a safety and freedom from sexual harassment and a sexually harassing environment were timely and adequately provided for by the conclusion of the disciplinary process.

b.     In this regard, Plaintiff was illegally deprived of options to participate in the determination of necessary sanctions and restrictions on Mr. Thurston,

c.     Further, Plaintiff was illegally deprived of the ability to redress, at the conclusion of the disciplinary proceedings, the failure of USF's policies and procedures to ensure that the conclusion of those disciplinary proceedings resulted in an outcome that restored the environment for Plaintiff to one that was free of sexual harassment and sexual hostility.

52.     Over the repeated and strenuous objections of Plaintiff, in furtherance of a sexually hostile educational environment, and sending a clear message of disregard and indifference to the safety of Plaintiff and others similarly situated, USF officials have:

a.     Permitted Andrew Thurston to maintain a teaching assistantship on the USF Tampa campus in which he has direct and unsupervised contact with undergraduate psychology students, including during evening hours;

b.     Permitted Andrew Thurston to maintain a teaching assistantship on the USF campus after assuring Plaintiff that would not be permitted;

c.     Failed and refused to alert or warn Andrew Thurston's undergraduate students that he has been found responsible by the University with having sexually assaulted a fellow student; and

d.     Actively discouraged Plaintiff from reporting to Mr. Thurston's undergraduate students what he did to her.

53.     The direct and proximate impact of USF's failure to restrict Mr. Thurston and provide visible and substantive consequences to him, while simultaneously discouraging Plaintiff from speaking her truth, has been to create, contribute to and promote an atmosphere and culture of sexual hostility, harassment and retaliation against Plaintiff and others similarly situated, including:

a.   By encouraging and permitting Mr. Thurston to malign and discredit Plaintiff to her peers as having made false allegations against him, including the other students in the "tight knit" doctoral program in which they are both enrolled;

b.   By disempowering and alienating Plaintiff in the educational environment from her peers, while empowering Mr. Thurston;

c.   By setting and enforcing a standard of tolerance at USF for sexual violence, even in cases where the victim is left not only raped, but bruised and bleeding;

d.   By creating substantial bases for students to distrust the University's published policies that facially assure a "zero tolerance" of sexual violence, commit to rectify any adverse impact on the academic environment, and promise to show care and compassion for victims of sexual violence, thus placing a chilling effect on further reporting of sexual violence; and

e.   To otherwise contribute to an atmosphere of acceptance of sexual violence and leaves Plaintiff feeling unsafe from further sexual violence, harassment and hostility.

54.   USF literally sought to promote, and in fact ensured, an outcome of Mr. Thurston's criminal acts which leaves him "equal" to his victim in access to University facilities and programs, despite any adverse impact on her, and literally

provided to Mr. Thurston the ability to refuse to accept any and all safety measures requested by Plaintiff following the outcome of the disciplinary process, without regard to:

      a.     Plaintiff's medical needs for protection and accommodation;

      b.     Plaintiff's deteriorating mental health and related ability to attend to her studies and academic programs and opportunities; and

      c.     Plaintiff's desire and need to access and utilize on-campus academic facilities.

55.    USF actively misled Plaintiff and other applicants for admission to the University by publishing policies and making public statements that "sexual violence is ... simply not tolerated" by the University, that the University is "committed to providing an environment free from sex discrimination, including sexual harassment and sexual violence," and that "the University will take steps to prevent the recurrence of harassment, including sexual violence, and to correct any discriminatory effects of harassment on the complainant and others."

56.    Plaintiff has retained the undersigned attorneys to represent her in this action and agreed to pay them a reasonable fee and costs associated with this action.

COUNT I – VIOLATION OF TITLE IX,
EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681 ET SEQ.
(Hostile Educational Environment)

57.    Plaintiff realleges and incorporates into this Count the Facts Common to All Counts alleged above.

58.    While attending University of South Florida, Plaintiff had a right under Title IX, after reporting an incident of sexual violence perpetrated by another student, not to be subject to sexual discrimination, sexual harassment and a sexually hostile atmosphere on campus and in the administration of her academic program, as well as a right not to be subjected to retaliation for complaining of same.

59.    At all times material hereto, USF officials, employees and/or agents with authority to institute corrective and preventive measures, had notice of and actual knowledge that Plaintiff had been subjected to sexual violence perpetrated by fellow graduate student, Andrew Thurston, including sexually battered within the meaning of Fla. Stat. sec. 794.011, and falsely imprisonment within the meaning of Fla. Stat. sec. 787.02.

60.    At all times material hereto, USF officials, employees and/or agents with authority to institute corrective and preventive measures, had notice and actual knowledge that Plaintiff was continuing to be subjected to sexual

discrimination, harassment and a sexually hostile atmosphere related to the ongoing presence of Andrew Thurston on the USF campus on a daily basis.

61.    At all times material hereto, Defendant's officials, employees and/or agents had notice and actual knowledge that allowing ongoing exposure of Plaintiff to the perpetrator, Andrew Thurston, would result and was resulting in a sexually harassing environment, and was inflicting, and continues to inflict, substantial mental health harm on her, at a level that impeded and continues to impede her ability to successfully complete her studies and participate fully in academic programs and educational opportunities that she previously enjoyed.

62.    The result of USF's continued sexually hostile and discriminatory policies, combined with Plaintiff being required to attend an educational environment with her rapist, and to forego attending educational opportunities in that environment, created a highly sexually hostile educational environment for Plaintiff on a daily basis.

63.    At all times, USF had the right at law and under its Student Code of Conduct, to redress fully the sexually hostile educational environment by having complete control over Mr. Thurston's presence on campus and at educationally-related activities off-campus, up to and including expelling him from the University and banning him from campus; USF failed to act to redress that environment.

64.   The discrimination, originating with Mr. Thurston's rape and false imprisonment of Plaintiff, and resulting in the ongoing and unmitigated risk to Plaintiff's safety from his ongoing presence on campus, the loss of her ability to continue attending USF without fear of encountering him on campus (which persists to date), and the loss of her ability to participate in certain educational and student activities, was and remains so severe, pervasive, and objectively offensive that it has and continues to bar Plaintiff's access to educational opportunities and benefits.

65.   Plaintiff was subjected to the discrimination because of USF's deliberate indifference to known acts of harassment, sexual violence, discrimination and retaliation, including, without limitation:

a.   USF's deliberate decision to pursue and enforce a policy and practice of empowering perpetrators of sexual violence, including by giving them the authority to accept or reject at whim "sanctions" that would be necessary for their victims' ability to have their educational environment restored to one that is not sexually harassing or hostile.

b.   USF's deliberate decision to pursue and enforce a policy and practice of determining and setting sanctions against sexual assailants without considering or consulting with victims as to their needs.

c.      USF's failure to establish and maintain a policy or procedure for sex crime victims to appeal the nature of establish sanctions against sexual assailants when the established sanctions were inadequate to restore the safety of the educational environment and redress fully a sexually hostile atmosphere.

d.      USF's failure to establish and maintain any policy or procedure for sex crime victims to seek additional protection as needed, over time, from their attackers and remediation of any related sexually hostile atmosphere from inadequate protection.

e.      USF's deliberate decision not to provide Plaintiff with requested safety measures and accommodations so that she could safely and with peace of mind pursue her academic coursework and attend educational opportunities, and be free from emotional harm in the process.

f.      USF's deliberate decisions not to comply with its own policies against gender-based misconduct, Title IX and sexual harassment and discrimination, as well as the legal requirements of Title IX as set forth in the directives from federal regulatory authorities that USF otherwise professed to honor and uphold.

g.      USF's deliberate decision to do nothing to eliminate the ongoing sexual assault risk posed by Andrew Thurston, prevent its recurrence and address its effects.

h.    Following its failure to redress the sexually hostile atmosphere it created, USF's deliberate decision to direct Plaintiff that she should consider withdrawing from the University and seeking her degree from another educational institution.

i.    Following its failure to redress the sexually hostile atmosphere it created, USF's deliberate decision to direct Plaintiff that she should skip weekly guest speaker sessions that are a mandatory component of her enrolled degree program, so as to allow Andrew Thurston to attend.

j.    USF's ongoing deliberate decision to fail and refuse to include Plaintiff in determinations of what remedies continue to be necessary to restore her educational environment to one of sufficient safety and comfort for her to access the education opportunities and benefits of USF, and failing to provide and/or enforce any policy or procedure intended to achieve such ends.

k.    By failing to train sufficiently and supervise school officials who were involved in handling Title IX and sexual violence complaints as to: the proper and effective assessment and investigation of complaints under Title IX; the nature and extent of the impact of sexual violence and harassment on victims; and the nature and extent of necessary response to and remedies to acts of sexual violence and harassment;

l.      By taking deliberate actions to retaliate against Plaintiff for her ongoing complaints of violation of her Title IX rights;

m.      By taking deliberate actions to threaten Plaintiff into silence and discourage her from reporting to other students at risk of exposure to Mr. Thurston as to the dangers he represents;

n.      By taking deliberate action to create an atmosphere of intimidation and silence among Plaintiff's professors who otherwise have sought to assist Plaintiff in obtaining necessary and proper protection from a sexually hostile atmosphere;

o.      By failing to establish and implement policies and procedures that ensured a commensurate response in sanctions to the perpetration of sexual violence; and

p.      By otherwise taking actions to establish and enforce a policy of "equal access" to the educational environment for Mr. Thurston as a perpetrator of sexual violence, including at the expense of Plaintiff's rights as his victim.

66.      Had USF not been deliberately indifferent to Plaintiff's harassment, discrimination and retaliation, and instead complied with its own policies and federal law by properly sanctioning and restricting Andrew Thurston's access to campus and direct contact with Plaintiff, while otherwise protecting Plaintiff's safety, Mr. Thurston would have been removed as a threat to Plaintiff and Plaintiff

could have accessed the full benefits and opportunities of the educational environment and continued her studies towards a USF doctoral degree. Instead, Plaintiff has been forced to forego educational opportunities and benefits, avoid campus, and reduce her course load due to the ongoing impact on her mental health of the sexually hostile atmosphere, while Thurston has been permitted to continue all on-campus activities and enjoy all academic opportunities and benefits, with no meaningful consequence or restrictions on his movements.

67.   As a direct and proximate result of USF's violation of Plaintiff's legally-protected rights, Plaintiff has suffered and sustained: extreme psychological and psychiatric harm, including the infliction of permanent psychological and/or psychiatric medical conditions within a reasonable degree of medical probability; pain and suffering; humiliation; embarrassment; loss of self-esteem; mental anguish; aggravation of pre-existing mental health conditions; disability; loss of capacity for the enjoyment of life; loss of earning capacity; and medical and therapeutic related expenses. These damages have been sustained in the past, are continuing and will continue in the future.

WHEREFORE, Plaintiff demands judgment for all damages provided at law and in equity against Defendant USF; attorneys' fees; injunctive relief requiring USF to take effective steps to prevent ongoing sex-based discrimination and harassment of Plaintiff in its education programs and mitigate the effects of

harassment, including by eliminating any hostile environment that is arising from or contributing to it; and such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of Title IX – 20 U.S.C. § 1681(a)
(Clearly Unreasonable Response to Sexual Violence)

68.   The facts pertinent to all counts set forth above are incorporated herein by reference.

69.   Plaintiff was subjected to physical sexual harassment, sexual discrimination and a sexually hostile atmosphere that was so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits.

70.   USF had a duty under Title IX to respond to Plaintiff's complaints, and ongoing complaints, of sexual harassment, sexual discrimination and a sexually hostile atmosphere in a manner that was reasonable and that undertook such steps as were reasonable available to it to redress that illegal atmosphere.

71.   USF's response to what it knew Plaintiff had and continued to endure in violation of Title IX, was, and continues to be, clearly unreasonable in light of the known circumstances.

72.   USF became a sexually hostile environment where Plaintiff's rapist, Andrew Thurston, and its response to that environment was clearly unreasonable and deliberately indifferent, for reasons that include, without necessary limitation:

a.   USF affirmatively allowing and encouraging Mr. Thurston to roam free on USF's campus, including in its academic buildings, as well as participating freely in student activities, knowing that Plaintiff would and was encountering him on a regular basis;

b.   USF imposing disproportionately lenient sanctions for the severity of the offense he committed against Plaintiff;

c.   USF threatening to impose a more severe sanction on Plaintiff for an alleged offense that, even if true, was much less severe than the crimes committed by Mr. Thurston;

d.   USF empowering Mr. Thurston to accept or reject at whim "sanctions" that would be necessary for Plaintiff's ability to have their educational environment restored to one that is not sexually harassing or hostile.

e.   USF's deliberate decision to set sanctions against Mr. Thurston without considering or consulting with Plaintiff's needs for an educational environment free from sexual hostility, harassment and retaliation.

f.   USF's deliberate decision to bar Plaintiff from seeking additional protection as needed, over time, from Mr. Thurston and remediation of any related sexually hostile atmosphere from inadequate protection.

g.   USF's deliberate decision not to accept Plaintiff's reasonable requests for measures and accommodations necessary for her safety and peace of mind to pursue her academic coursework and attend educational opportunities, and be free from emotional harm relative to Mr. Thurston's attacks and ongoing presence on campus.

h.   USF's deliberate decisions not to comply with its own policies against gender-based misconduct, Title IX and sexual harassment and discrimination, as well as the legal requirements of Title IX as set forth in the directives from federal regulatory authorities that USF otherwise professed to honor and uphold.

i.   USF's deliberate decision to do nothing to eliminate the ongoing sexual assault risk posed by Andrew Thurston, prevent its recurrence and address its effects.

j.   USF's deliberate decision to direct Plaintiff that she should consider withdrawing from the University and seeking her degree from another educational institution.

k.      USF's deliberate decision to direct Plaintiff that she should skip weekly guest speaker sessions that are a mandatory component of her enrolled degree program, so as to allow Andrew Thurston to attend.

l.      USF's ongoing deliberate decision to fail and refuse to include Plaintiff in determinations of what remedies continue to be necessary to restore her educational environment to one of sufficient safety and comfort for her to access the education opportunities and benefits of USF, and failing to provide and/or enforce any policy or procedure intended to achieve such ends.

m.      USF's deliberate decision to fail to train sufficiently and supervise school officials who were involved in handling Title IX and sexual violence complaints as to: the proper and effective assessment and investigation of complaints under Title IX; the nature and extent of the impact of sexual violence and harassment on victims; and the nature and extent of necessary response to and remedies to acts of sexual violence and harassment;

n.      By taking deliberate actions to retaliate against Plaintiff for her ongoing complaints of violation of her Title IX rights;

o.      By taking deliberate actions to threaten Plaintiff into silence and discourage her from reporting to other students at risk of exposure to Mr. Thurston as to the dangers he represents;

p.   By taking deliberate action to create an atmosphere of intimidation and silence among Plaintiff's professors who otherwise have sought to assist Plaintiff in obtaining necessary and proper protection from a sexually hostile atmosphere;

q.   By enforcing a policy of "equal access" to the educational environment for Mr. Thurston as a perpetrator of sexual violence, including at the expense of Plaintiff's rights as his victim.

73.   Had USF provided a reasonable response to Plaintiff's harassment, discrimination and retaliation, and complied with its own policies and federal law by properly sanctioning and restricting Andrew Thurston's access to campus and direct contact with Plaintiff, while otherwise protecting Plaintiff's safety, Mr. Thurston would have been removed as a threat to Plaintiff and Plaintiff could have accessed the full benefits and opportunities of the educational environment and continued her studies towards a USF doctoral degree.  Instead, Plaintiff has been forced to forego educational opportunities and benefits, avoid campus, and reduce her course load due to the ongoing impact on her mental health of the sexually hostile atmosphere, while Thurston has been permitted to continue all on-campus activities and enjoy all academic opportunities and benefits, with no meaningful consequence or restrictions on his movements.

74.   As a direct and proximate result of USF's violation of Plaintiff's legally-protected rights, Plaintiff has suffered and sustained: extreme psychological and psychiatric harm, including the infliction of permanent psychological and/or psychiatric medical conditions within a reasonable degree of medical probability; pain and suffering; humiliation; embarrassment; loss of self-esteem; mental anguish; aggravation of pre-existing mental health conditions; disability; loss of capacity for the enjoyment of life; loss of earning capacity; and medical and therapeutic related expenses.  These damages have been sustained in the past, are continuing and will continue in the future.

WHEREFORE, Plaintiff demands judgment for all damages provided at law and in equity against Defendant USF; attorneys' fees; injunctive relief requiring USF to take effective steps to prevent ongoing sex-based discrimination and harassment of Plaintiff in its education programs and mitigate the effects of harassment, including by eliminating any hostile environment that is arising from or contributing to it; and such other and further relief as this Court deems just and proper.

COUNT III
Violation of Title IX – 20 U.S.C.  § 1681(a)
(Retaliation)

75.   The facts pertinent to all counts set forth above are incorporated herein by reference.

76.   Plaintiff was subjected to sexual harassment, sexual discrimination and a sexually hostile atmosphere that was so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits.

77.   USF had a duty under Title IX to respond to Plaintiff's complaints, and ongoing complaints, of sexual harassment, sexual discrimination and a sexually hostile atmosphere in a manner that was not retaliatory of her complaints.

78.   Plaintiff engaged repeatedly, and in an ongoing manner from December 2016 to present of her complaints of sexual harassment, sexual discrimination and a sexually hostile atmosphere related to Mr. Thurston's presence on campus and his virtually unfettered right to participate alongside her in educational activities that provoked severe emotional harm to her, among other matters related to violation by USF of her Title IX rights.

79.   USF took action against Plaintiff in response to and in retaliation for her complaints that was materially adverse to her within the standard of a reasonable person, including without necessary limitation:

a.   By directing that Plaintiff skip academic opportunities as the method to redress her distress over Mr. Thurston's presence.

b.   By directing that Plaintiff withdraw from USF and transfer to another school as the method to redress her distress over Mr. Thurston's presence.

c.     By violating the sanctity of Plaintiff's confidential relationship with her victim advocate in order to support contrived and illegal charges against her for alleged violation of the Student Code of Conduct.

d.     By violating Plaintiff's Constitutionally-protected First Amendment rights.

e.     By punishing Plaintiff for exercising her Constitutionally-protected First Amendment rights.

f.     By threating to punish Plaintiff more severely than her rapist for an alleged conduct violation of far less severity and subjecting her to disciplinary proceedings to follow through on that threat.

g.     By threatening and intimidating Plaintiff's professors in response to their efforts to advocate for her and obtain for her greater and necessary protection from the sexually harassing and hostile atmosphere that she continued to suffer from.

80.     The aforesaid actions taken by USF against Plaintiff were undertaken contemporaneously with the time period during which Plaintiff was purposefully and continually objecting to violation of her Title IX rights by USF.

81.     The aforesaid actions taken by USF against Plaintiff would dissuade a reasonable person from making or supporting a complaint of discrimination, or continuing to do so.

39

82. The aforesaid actions taken by USF produced severe emotional and mental health harm to Plaintiff; said harm was foreseeably and objectively known to be capable of inflicting such harm.

83. USF took its materially adverse actions against Plaintiff specifically because of and in response to her complaints of Title IX violations and the sexually harassing, discriminatory and hostile atmosphere she was, and continues, to suffer.

84. As a direct and proximate result of USF's violation of Plaintiff's legally-protected rights, Plaintiff has suffered and sustained: extreme psychological and psychiatric harm, including the infliction of permanent psychological and/or psychiatric medical conditions within a reasonable degree of medical probability; pain and suffering; humiliation; embarrassment; loss of self-esteem; mental anguish; aggravation of pre-existing mental health conditions; disability; loss of capacity for the enjoyment of life; loss of earning capacity; and medical and therapeutic related expenses. These damages have been sustained in the past, are continuing and will continue in the future.

WHEREFORE, Plaintiff demands judgment for all damages provided at law and in equity against Defendant USF, attorneys' fees, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues to triable.

Dated on this 30th day of November, 2017.

Respectfully submitted,

MICHAEL T. DOLCE, ESQ.
Florida Bar No.: 048445
mdolce@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400