UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA L. GARRETT,

    Plaintiff,

v.                                              CASE NO. 8:17-cv-2874-T-23AAS

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

    Defendant.
_____/

**ORDER**

Samantha Garrett, a graduate student at the University of South Florida, sues (Doc. 1) USF under Title IX and claims a "hostile educational environment," a "clearly unreasonable response to sexual violence," and retaliation. USF moves (Doc. 22) to dismiss the complaint for failure to state a claim.[1]

**DISCUSSION**

**1. Garrett's allegations**

On Saturday, November 12, 2016, Garrett visited a classmate, Andrew Thurston, at Thurston's off-campus apartment. (Doc. 1 at ¶ 9) That night or early the next morning, Thurston allegedly "committed sexual battery on [Garrett]" by forcing unspecified "sexual acts on [Garrett]." (Doc. 1 at ¶¶ 9–10)

---

[1] The clerk initially assigned this action to Judge Covington but re-assigned the action after Judge Covington recused herself. (Doc. 23)

Three weeks after the alleged assault, Garrett mentioned the incident to a USF psychology professor, who reported the incident to a Title IX official at USF. (Doc. 1 at ¶ 15) On December 6, the day after the psychology professor's report, USF acknowledged receiving the report in a "Title IX initial contact letter" to Garrett. On December 9, Garrett formally complained to USF about Thurston's conduct, and USF assigned Joanna Elwood to investigate. (Doc. 1 at ¶ 18) Elwood allegedly learned that Thurston "offered to drop out of USF so as not to interfere with [Garrett's] progress" and that Thurston falsely reported to police that Garrett "was threatening suicide," a false report that purportedly resulted in Garrett's involuntary commitment under the Baker Act. (Doc. 1 at ¶ 20) Garrett alleges that Elwood found evidence sufficient to substantiate the complaint that Thurston violated two provisions of USF's code of conduct "relate[d] to [] non-consensual intercourse and non-consensual sexual contact." (Doc. 1 at ¶¶ 21 and 23)

On March 9, 2017, USF allegedly wrote Thurston a "no-contact letter" in which USF asked Thurston not to contact Garrett. (Doc. 1 at ¶ 22) That same day, USF charged Thurston with violating USF's code of conduct. (Doc. 1 at ¶ 23) USF recommended sanctioning Thurston by imposing a "deferred suspension" that permitted Thurston to remain enrolled at USF and to attend the same classes as Garrett. (Doc. 1 at ¶ 24) Thurston allegedly accepted the recommended sanction, and USF informed Garrett on March 20, 2017, about the disposition of her complaint against Thurston. (Doc. 1 at ¶¶ 24–25) The complaint includes no allegation that Garrett appealed from the disposition of her university complaint.

After the incident, Garrett allegedly "began to struggle and fail in her academic studies." (Doc. 1 at ¶ 20) Garrett attributes her academic and emotional difficulties to Thurston's continued presence in Garrett's classes and in other areas of the campus; both Garrett and Thurston remain enrolled in a "small" and "close knit" program. (Doc. 1 at ¶ 20) Garrett alleges that USF "permitted Thurston to continue to have regular direct contact with [Garrett]" by:

> a. Park[ing] in the same parking lot that [Garrett] was assigned to park in.
>
> b. Maintain[ing] an office as a teaching assistant in the same building that [Garrett's] assigned office was in.
>
> c. Be[ing] on campus at the same time [Garrett] was for academic purposes, including attending classes.
>
> d. Attend[ing] classes that Plaintiff was enrolled in.
>
> e. Enter[ing] classrooms where [Garrett] was performing her duties as a teaching assistant.
>
> f. Attend[ing] weekly guest speaker sessions that were an academic requirement for [Garrett's] studies.
>
> g. Be[ing] in the same room as Plaintiff, no matter how small, at educational meetings, educational and professional conferences...

(Doc. 1 at ¶ 26)

Garrett allegedly complained to USF that Thurston's presence distressed Garrett and distracted her from her studies. (Doc. 1 at ¶ 27) Also, Garrett allegedly complained to USF about "deliberate, orchestrated actions by Thurston subsequent to March 2017 to approach [Garrett] and be in her presence on campus." (Doc. 1 at ¶ 28) Garrett pleads no details about these purportedly "deliberate" and "orchestrated" actions.

- 3 -

Additionally, Garrett alleges that USF "actively rejected and sought to illegally silence the ongoing concerns raised by professors in the doctoral program in which [Garrett] and Thurston are enrolled." (Doc. 1 at ¶ 39) And Garrett complains that USF instructed faculty not to treat Thurston "as a criminal."[2] (Doc. 1 at ¶ 39)

Also, Garrett alleges that in June 2017 USF charged Garrett with violating the USF code of conduct in an effort "to retaliate against [Garrett] and silence her ongoing complaints about USF's violations of her Title IX rights." (Doc. 1 at ¶ 43) According to the complaint, USF charged Garrett with illegally recording a conversation among Garrett, a victim advocate, and another USF employee. (Doc. 1 at ¶ 44) Rather than denying that she recorded the conversation, Garrett alleges that the recording "would not violate Florida law." (Doc. 1 at ¶ 45)

Additionally, Garrett alleges the conclusion that USF "failed to have in place adequate and sufficient policies and procedures that ensured a sex crime victim's on-campus needs for [] safety and freedom from sexual harassment and a sexually harassing environment were timely and adequately provided for by the conclusion of the disciplinary process." (Doc. 1 at ¶ 51) According to Garrett, USF "illegally deprived [her] of options to participate in the determination of necessary sanctions and restrictions on [the classmate]." (Doc. 1 at ¶ 51) Garrett alleges no facts that support her conclusions about the inadequacy of USF's Title IX program.

---

[2] The State Attorney never filed a criminal charge against Thurston based on the incident. On two occasions, Garrett sued Thurston in the Circuit Court for Hillsborough County and requested a protective order. Thurston prevailed both times. *Case nos.* 17-DR-005507 (Apr. 5, 2017), 17-DR-016715 (Sept. 26, 2017).

Finally, Garrett alleges that USF violated Title IX by permitting Thurston to serve as a teaching assistant, by failing to announce publicly that USF sanctioned Thurston for violating USF's code of conduct, and by dissuading Garrett from reporting Thurston's alleged misconduct to the undergraduate students whom Thurston taught. (Doc. 1 at ¶ 52)

**2. USF's investigation**

**A. Garrett's testimony**

In her university complaint (Doc. 23-4) against Thurston, Garrett alleged that she and Thurston met at 6 p.m. on Saturday, November 12, 2016, saw a movie at a theater, and returned to Thurston's apartment after the movie. Feeling "buzzed" from a drink at the theater, Garrett sat with Thurston for some time on his couch before Thurston "carried her upstairs to his bed." Asked whether she wanted another drink, Garrett said "sure," and Thurston mixed Garrett a vodka soda. While they laid on Thurston's bed, Thurston "began kissing Garrett, which at first was consensual." With Garrett's consent, Thurston removed Garrett's shirt and bra and began "touch[ing] her breasts." Thurston allegedly "placed Garrett's hand on [Thurston's] penis" several times, but each time Garrett removed her hand; after the third or fourth time, Garrett allegedly "became uncomfortable and told Thurston she was ready to drive home now." But Thurston "begged" Garrett to stay, and Garrett remained in bed "cuddl[ing]" with Thurston. After cuddling for some time, Thurston allegedly attempted to remove Garrett's pants and underwear, but Garrett

resisted without success. Garrett alleged that Thurston "penetrate[d] Garrett's vagina with his fingers" but that Thurston stopped after a minute as Garrett continued to protest. After the alleged assault, Thurston asked Garrett to "stay and lay with him." Allegedly "scared" of Thurston, Garrett acquiesced, and the two slept in the same bed "with no further issue." The next morning, Garrett and Thurston agreed not to "cross the 'friend' line again."

### B. Thurston's testimony

In an interview with Elwood, Thurston denied "that anything forceful happened between" Garrett and him. Thurston stated that Garrett expressly consented to his "stimulat[ing] Garrett to the point of climax." According to Thurston, Garrett "stimulated [Thurston's] penis manually twice" but Thurston "pushed Garrett's hand away both times." The next morning, Thurston allegedly told Garrett that he "didn't intend to get involved with her sexually," and the two agreed to a strictly platonic friendship. Two times after the alleged assault, Garrett reportedly slept in Thurston's bed. According to Thurston, the two saw each other socially several times after November 12, and Garrett claimed an assault only after Thurston told Garrett about his upcoming date with another woman.

### C. Elwood's resolution of the university complaint

In addition to interviewing Garrett and Thurston, Elwood spoke with two third parties, one of whom reportedly saw Thurston and Garrett together after the alleged assault. Appearing to partially corroborate Thurston's testimony, the third

party stated that "Thurston appeared stiff/non-emotional and Garrett appeared to be physically leaning into him."

Based on Garrett's testimony, Elwood found sufficient evidence to show that Thurston more likely than not violated the prohibitions in the USF code of conduct against "non-consensual sexual intercourse" and "non-consensual sexual contact."[3] (Doc. 23-4) Elwood found two items undisputed: first, that Garrett and Thurston "were close, personal friends, who communicated their love for each other frequently," and second, that Garrett and Thurston "were engaged in consensual kissing, removing of the bra and touching of [Garrett's] breasts on November 12, 2016." Elwood found the remainder of Garrett's allegations disputed but left blank the sections of the investigative report titled "credibility assessment" and "findings."

A motion to dismiss challenges the sufficiency of the complaint, not whether the evidence supports the plaintiff's claims. Although interesting, the investigative report and the other documents appended to USF's motion warrant no consideration at this moment. *See Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) (holding that only the complaint and a document "central" to the plaintiff's claim warrant consideration in resolving a motion to dismiss).

---

[3] Acknowledging that the preponderance burden and other procedures attendant to a Title IX proceeding often result in an erroneous adjudication of guilt, the Department of Education in September 2017 revised its Title IX policy to rescind the requirement that a university apply the preponderance burden. Under the revised policy, a university may apply a higher burden (clear and convincing evidence) to a Title IX complaint. The preponderance guideline remained in effect at the time Garrett complained to USF about Thurston's conduct.

- 7 -

**3. "Hostile educational environment" and "clearly unreasonable response to sexual violence"**

The Supreme Court interprets Title IX to permit an action against a university that receives federal money earmarked for education if the university manifests "deliberate indifference" to "student-on-student" harassment. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). To succeed on a Title IX claim, the plaintiff must show the university's "deliberate indifference to known acts of harassment" so "severe, pervasive, and objectively offensive" that the harassment "effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 639–54. "Deliberate indifference" means the university's response to the harassment "is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

In *Davis*, a fifth-grade student at an elementary school began touching a classmate's "breasts and genital area and made vulgar statements" to the classmate. The harassment began in December 1992 and recurred several times in January 1993; in each instance, the classmate reported the incident to her mother and to the fifth-grade teacher. The mother contacted the teacher, who allegedly assured the mother that the principal knew about the incidents. Twice in February 1993, the other student harassed the classmate, who continued to report the incidents to her mother and to the teacher. In April 1993, the other student allegedly "rubbed his body against [the daughter] in the school hallway in what [the daughter] considered a sexually suggestive manner"; again, the daughter reported the incident to her teacher.

The mother alleged that the other student harassed not just her daughter but several other students; at one point, "a group of [the plaintiff] and other female students tried to speak with" the principal about the harassment, but a teacher refused to allow the students to talk to the principal. Suing the school board, the mother alleged that the school board never disciplined the assailant and never attempted to remedy the repeated harassment. Emphasizing the school board's persistent failure to attempt remedying the recurring harassment, *Davis* holds that the plaintiff stated a claim under Title IX.

Despite concluding that the plaintiff stated a claim, *Davis* cautions the judiciary against "second-guessing the disciplinary decisions made by school administrators." 526 U.S. at 648 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 342–43 (1985)). Also, *Davis* confirms that Title IX affords a plaintiff no "right to make particular remedial demands" and that a school need not suspend or expel an alleged assailant in order to avoid liability under Title IX. *Davis*, 526 U.S. at 648–49. In fact, the decisions consistently recognize that the hasty suspension or expulsion of a student who allegedly harassed another student might violate the former's rights and might subject a university to suit from the suspended or expelled student. *Davis*, 526 U.S. at 649 ("Like the dissent, we acknowledge that school administrators shoulder substantial burdens as a result of legal constraints on their disciplinary authority."); *Davis*, 526 U.S. at 682–83 (Kennedy, J., dissenting).

Unlike in the typical Title IX action, the allegations in this action show that USF promptly acknowledged and investigated Garrett's complaint (Doc. 1 at ¶¶ 16 and 19), and no well-pleaded allegations show an inadequate or unduly prolonged investigation. *Cf. Williams v. Board of Regents of the Univ. System of Georgia*, 477 F.3d 1282 (11th Cir. 2007)*; Davis*, 526 U.S. at 629 (observing that the complaint alleged that the school board "made no effort either to investigate or to put an end to the harassment"); *Kinsman v. Florida State Univ. Bd. of Trustees*, 2015 WL 11110848 (N.D. Fla. Aug. 12, 2015) (Walker, J.) (denying FSU's motion to dismiss where FSU allegedly delayed a Title IX investigation and a disciplinary hearing until after quarterback Jameis Winston played his final football game for FSU).

The bulk of Garrett's complaint (Doc. 1 at ¶¶ 26, 27, 29, 30, 31, 32, 33, 34, 36, 37, 54, 63, 64, 65, 66, 72, and 73) protests USF's failure to ensure that Thurston absented himself from Garrett at all times — a remedy that might require USF to suspend or expel Thurston. For example, Garrett insists that USF violated Title IX by failing to "ban[] [Thurston] from being in the same academic building as [Garrett] any time that she was there." (Doc. 1 at ¶ 32) Garrett identifies no instance after December 5 in which Thurston touched Garrett, spoke to Garrett, or harassed Garrett in any manner.

USF cites several decisions for the proposition that a university's knowledge of an alleged assailant's "mere presence" on campus cannot establish "deliberate indifference." For example, in *M.D. by and through Deweese v. Bowling Green*

*Independent School District*, 709 Fed.Appx. 775 (6th Cir. Oct. 6, 2017) (Thapar, J.), the plaintiffs sued on behalf of their daughter, whom a classmate assaulted. The school board suspended the assailant but later permitted him to return to the daughter's school, and the assailant's presence on campus distressed the daughter. Affirming summary judgment for the school board, *M.D. by and through Deweese* explains that the daughter's success on a Title IX claim "would effectively foreclose remedial measures short of expulsion and undermine the 'flexibility' that the *Davis* Court took care to guard." 709 Fed.Appx. at 778. Likewise, *Clifford v. Regents of University of California*, 2012 WL 1565702 (E.D. Cal. Apr. 30, 2012) (Mendez, J.), dismisses a complaint with prejudice and holds that the continued presence on campus of several alleged assailants "is insufficient to support a claim for [a] hostile environment." 2012 WL 1565702 at *7.

*Patricia H. v. Berkeley Unified School District*, 830 F.Supp. 1288 (N.D. Cal. 1993) (Orrick, J.), which is Garrett's principal authority for the assertion that an assailant's "mere presence" on campus can subject a university to liability under Title IX, involves facts decisively different from this action.[4] *See Clifford*, 2012 WL 1565702 at *7 (distinguishing *Patricia H.*). In *Patricia H.*, the plaintiff sued on behalf of her ten- and twelve-year-old daughters, who were molested by a teacher. Even after learning about the molestation, the school board permitted the teacher to remain employed

---

[4] Also, Garrett quotes (Doc. 26 at 14) *Wills v. Brown University*, 184 F.3d 20, 36–37 (1st Cir. 1999), which relies principally on *Patricia H.*, but Garrett fails to mention that she quotes the dissent. *See Wills*, 184 F.3d at 36–37 (Lipez, J., dissenting).

- 11 -

and to remain on campus. Denying summary judgment for the school board, *Patricia H.* emphasizes the "grave disparity in age and power" between the children and the teacher. In contrast, Garrett is an adult enrolled in a doctoral program.

In this circumstance, the resolution of Garrett's deliberate-indifference claim requires a more developed record. Although count one remains, Garrett identifies no difference between the "hostile educational environment" claim in count one and the "clearly unreasonable response to sexual violence" claim in count two. Under *Davis*, success on a "hostile educational environment" claim — that is, a claim of a university's deliberate indifference to severe, pervasive, and objectively offensive harassment known to the university — requires proving a "clearly unreasonable response to sexual violence." In accord with Rule 12(f), count two warrants dismissal as redundant.

### B. Retaliation

The Supreme Court interprets Title IX to prohibit retaliation against a person for reporting, or complaining about, sexual discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). USF argues that the retaliation claim fails because Garrett cannot succeed on the deliberate-indifference claim (Doc. 22 at 22), but the retaliation claim depends on several facts different from the facts on which the deliberate-indifference claim. Because Garrett alleges that USF charged her with a

code-of-conduct violation in retaliation for complaining about USF's disposition of her complaint against Thurston, Garrett states a claim for retaliation.[5]

## CONCLUSION

A month after a classmate allegedly assaulted her, Samantha Garrett mentioned the incident to a USF professor, who promptly informed USF's Title IX coordinator about the alleged assault. USF immediately contacted Garrett and promptly investigated Garrett's complaint against the classmate, Andrew Thurston, but Garrett protests USF's alleged failure to ensure that Thurston absent himself from Garrett's presence. In this circumstance, the record requires further development, and the motion to dismiss the deliberate-indifference claim in count one warrants denial. Also, Garrett states a claim for retaliation.

The motion to dismiss (Doc. 22) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The redundant claim in count two is **DISMISSED**, but the deliberate-indifference and retaliation claims in counts one and three remain. No later than **JULY 26, 2018**, the parties must mediate before Peter Grilli.

ORDERED in Tampa, Florida, on April 18, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[5] Garrett fails to state a claim for retaliation based on USF's allegedly "threatening" and "retaliating" against Garrett's professors. Retaliation requires that the plaintiff, not a third party, suffer an adverse action. *See, e.g.*, *Burchfield v. Indus. Chem., Inc.*, 2012 WL 5872808 at *5 (N.D. Ala. Nov. 16, 2012) (Proctor, J.) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).