UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA L. GARRETT,

      **Plaintiff,**

v.                                                                        CASE NO: 8:17-cv-2874-T-23AAS

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

      **Defendant.**
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF MAKENZIE SCHIEMANN

The Defendant, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES (hereinafter "Defendant"), by and through its undersigned counsel hereby responds to the Plaintiff's Motion to Compel Deposition of Makenzie Schiemann (Dkt. No. 67; Motion to Compel). More than a month after the close of discovery, the Plaintiff requests, for the first time, a deposition of an individual that she has known about since before this lawsuit was filed. Moreover, Plaintiff first requested this deposition on September 25, 2018, at 12:07 p.m. By 8:09 p.m. that same day, the Defendant responded in detail with citation to the depositions and documents as to why it was opposing this deposition. (See Exhibit A). The Defendant's position was far more detailed than the Plaintiff represents in the Motion and was beyond an objection based on relevance as the Plaintiff states in the motion.

The Defendant's response, the Defendant also cited the applicable rule, Rule 16(b), which the Plaintiff does not cite or address in her motion. In fact, this is yet another motion, filed by Plaintiff, where she has cited no authority to support her request and has failed to comply with Local Rule 3.01(a) by providing a memorandum of law. Despite being titled as a motion to

compel, the Plaintiff does not even cite Rule 37 of the Federal Rules of Civil Procedure. Additionally, as the Plaintiff is aware, the time for filing a motion to compel has passed. If the Plaintiff wants to reopen discovery and seek this deposition, then she needs to move to amend the scheduling order and establish good cause under Rule 16(b). She has failed to do so. Nonetheless, as addressed below, even if the Plaintiff had filed the appropriate motion for this request, it still must be denied because there is no good cause to extend the discovery deadline or to reopen discovery in this case.

Moreover, despite the fact that the Defendant provided a detailed explanation of its position on September 25, 2018, the Plaintiff delayed, again, in filing this motion by waiting until October 8, 2018 (a court holiday), nearly two weeks later, to file this motion. Indeed, at the time that the Defendant filed a motion to extend the dispositive motion deadline and trial date, the parties already had conferred with respect to this request for Ms. Schiemann's deposition. The Plaintiff, however, did not raise her request to amend the scheduling order to accommodate her recent request for Ms. Schiemann's deposition. Instead, the Plaintiff sat on her hands and waited until October 8, 2018, to raise this issue. As a result, the Plaintiff exercised a complete lack of diligence in pursuing this discovery, and has not and cannot establish good cause for amending the scheduling order under Rule 16(b). Therefore, this motion must be denied.

## MEMORANDUM OF LAW

### I. Background.

On November 30, 2017, the Plaintiff filed a three-count complaint, alleging violations of the Title IX of the Education Amendments of 1972. (See Complaint (Dkt. No. 1)). As the Court recognized in granting in part, the Defendant's motion to dismiss, the "bulk of Garrett's complaint . . . protests USF's failure to ensure that Thurston absented himself from Garrett at all times."

(Order (Dkt. No. 25) at 10). On February 6, 2018, the Court entered a Case Management and Scheduling Order (Dkt. No. 27), setting the discovery deadline in this case for August 31, 2018.

Before filing this lawsuit, the Plaintiff provided documents to USF on July 13, 2017, as part of her student conduct case. (See Exhibit B). Some of these documents were notes from Megan Deremiah, the victim advocate. (See id.). These notes clearly disclose Makenzie Schiemann's role and involvement with respect to the Plaintiff. For example, these notes disclose the following:

- "Advocate scheduled a time to meet with her director and disclosed that the client had stated that she had recorded the conversation with Crystal without Crystal's permission. The director identified that this was illegal, but was also concerned about confidentiality. Unsure of what to do, the director is going to make a call to the consultant as well as general counsel." (Bates No. 2296).

- "After speaking with the consultant and Jodi Adamchak from general counsel, the CVA director called the advocate to let her know that we were going to have to file an SRR report against the client for recording the conversation." (Bates No. 002292).

- "Advocate called Maria in SRR with director and senior advocate present. Director took lead on the conversation and explained the situation (without identifiers at first)." (Bates No. 002293).

- "Maria stated that this is a felony in the State of Florida and then asked to speak to the director privately." (Bates No. 002293).

(Id.).

On February 2, 2018, the Plaintiff also produced these notes of Megan Deremiah during discovery along with additional notes showing that the Plaintiff was fully aware of the role of the Director, Makenzie Schiemann. (See Exhibit C). Specifically, these notes provide:

- "At that time, the advocate was unaware of the limits of her confidentiality and chose to not address the concern until she spoke to her director." (Bates No. S GARR Feb2018 000784).

- "Advocate called the client with director present. . . . Director added that the advocate needs to file a report in order to make sure that she won't be held

> accountable for the crime as well." (Bates No. S GARR Feb2018 000790).
>
> - "Advocate asked the director how to proceed given the circumstances of the case. . . . Director suggested that the advocate contact Maria, explain that it is a gray area because the client isn't seeking services on this conduct process but is still a client, and ask Maria how she would like the advocate to proceed. Director also suggested that even if Maria doesn't tell the advocate what charges SRR is considering, to tell the client the SRR is unsure at the moment and nothing has been decided." (Bates No. S GARR Feb2018 000796).
>
> - "Advocate called the Maria as instructed by her director." (Bates No. S GARR Feb2018 000797).
>
> - "Advocate spoke with her director about the case. Director has spoken with Maria in SRR and relayed that no communication should be had about the open case in which the client is a respondent but that she can continue to serve as the advocate for the original case. Per the director's instructions, notes will not be kept in this case file about the SRR investigation in which the client is a respondent." (Bates No. S GARR Feb2018 000799).

(Id.).

To the extent that the Plaintiff claims that she did not know the identity of the director, despite speaking with her on May 19, 2017, Megan Deremiah provided this information during her deposition on April 17, 2018. (See Exhibit D). Ms. Deremiah testified that Makenzie Schiemann is her director and she explained Ms. Schiemann's role. (Id. at 9, 62-63, 73, 103-107). In particular, she stated that "my director spoke with an outside consultant as well as general counsel here at USF," and the Plaintiff asked Megan Deremiah about some of the documents, referenced above, that the Plaintiff had produced in the discovery. (Id. at 103-107). Ms. Deremiah again clarified that the director referenced in these notes was Makenzie Schiemann, and the general counsel was Jodi Adamchak. (Id. at 104, 106). Despite the Plaintiff's clear knowledge of Ms. Schiemann and her role, the Plaintiff still did not seek the deposition of Ms. Schiemann during discovery in this case.

The Plaintiff also elicited testimony from Crystal Coombes and Maria Zale Cutsinger

4

regarding Ms. Schiemann's role.  (See Exhibit E at 94, 104; Exhibit F at 108, 111-113, 119-120). However, she decided not to seek the deposition of Ms. Schiemann.

On the other hand, she did request documents from Ms. Schiemann as the director in Request No. 27, which the Defendant produced as admitted by the Plaintiff at the hearing on August 22, 2018.  These documents also disclosed the role of Ms. Schiemann, and Ms. Schiemann was specifically identified as the Director of the Center for Victim Advocacy and Violence Prevention Chair.  The Plaintiff, again, did not request the deposition of Ms. Schiemann until September 25, 2018.

On September 25, 2018, at 12:07 p.m., the Plaintiff requested, for the first time, the deposition of Makenzie Schiemann.  (See Exhibit A).  After requesting that the Plaintiff explain what information she was seeking from this deposition, the Defendant provided a detailed response explaining its objection to this deposition.  (See id.).  In doing so, it provided that there was not good cause to amend the scheduling order under Rule 16(b), it outlined all of the information that the Plaintiff had prior to the close of discovery related to Ms. Schiemann, and it explained the lack of relevance of her testimony based on the unredacted e-mail, which the Plaintiff asserts is the basis for this request.  (See id.).  The Plaintiff did not respond to this e-mail.

On September 27, 2018, the parties conferred regarding the Defendant's motion to extend the dispositive motion deadline as well as the trial date.  The Plaintiff did not indicate that she was going to seek to amend the scheduling order to allow her to take the deposition of Makenzie Schiemann.  Instead, she represented that she did not oppose the extension of the dispositive motion deadline, but that she would only agree with a one-month extension of the trial date.  The Court ruled on that motion on October 2, 2018, granting it in part and entering a new scheduling order.  Six days later, on October 8, 2018 (a court holiday), the Plaintiff filed her motion seeking,

for the first time, to compel the deposition of Makenzie Schiemann, which requires the Court to amend the scheduling order and reopen discovery. The Plaintiff offers no excuse for her extraordinary delay in filing this motion.

For the reason set forth herein, the Defendant respectfully requests that the Court deny this untimely motion as the Plaintiff has failed to show good cause for amending the scheduling order.

**II.    The Plaintiff Again Fails to Comply with the Local Rules.**

As she did in her prior motion for in camera review, in this motion, the Plaintiff again fails to comply with Local Rule 3.01(a). Pursuant to Local Rule 3.01(a), the Plaintiff is required to "include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request." Local Rule 3.01(a). It cannot be disputed that the Plaintiff failed to comply with this requirement. Despite labeling this motion as a motion to compel, she does not even cite to Rule 37. Additionally, the Defendant in its response to this request explained that Rule 16(b) governs this request. The Plaintiff also does not cite this rule or make any attempt to provide any legal argument as to why she should be permitted to take this deposition at this late stage of this case. She has completely failed in her obligation to comply with the Local Rules.[1]

For this reason alone, the Motion should be denied.    See King v. Bd. of County

---

[1] Additionally, as the Court previously noted, "the court typically only addresses discovery motions filed within the discovery deadline." (Order (Dkt. No. 48) at 1). In the Case Management Report, the parties also agreed that "[t]he Court may deny as untimely all motions to compel filed after the discovery deadline." (Case Management Report (Dkt. No. 14) at 5). This motion to compel was filed well outside of that deadline and should be denied as untimely. Moreover, it is improperly titled motion to compel. It is a motion to amend the scheduling order to extend discovery in this case, which is governed by Rule 16(b), not Rule 37. However, as set forth above, neither of those rules are even cited in the motion. Nonetheless, while the Plaintiff's continued failure to follow the rules and properly state a motion should be grounds alone to deny this request, the Plaintiff also does not have a legal basis to obtain the relief requested, which the Defendant also addresses in this response.

6

Commissioners, Polk County, Florida, 8:16-CV-2651-T-33TBM, 2017 WL 1093647, at *13 (M.D. Fla. Mar. 23, 2017) (concluding that the motions should be denied for violation Local Rules 3.01(a) and (g)); R.W. v. Spinelli, 8:11-CV-1326-EAK-AEP, 2013 WL 6244522, at *3 (M.D. Fla. Dec. 3, 2013) (denying the motion because the movant did not provide supporting legal authority for the motion); Bolden v. Ft. Myers Police Dept., 2:11-CV-173-FTM-99, 2012 WL 3012638, at *1 (M.D. Fla. July 23, 2012) (striking a motion to dismiss because it failed to contain a memorandum of legal authority as required by Local Rule 3.01(a)); Robinson v. Temps, 6:08-CV-1241ORL19DAB, 2008 WL 4378497, at *3 (M.D. Fla. Sept. 22, 2008) (concluding that the Court must strike the motion if it does not contain a citation of authorities as required by Local Rule 3.01(a)); U.S. ex rel. Vargas v. Lackmann Food Serv., Inc., 510 F. Supp. 2d 957, 968 (M.D. Fla. 2007) (holding that the failure to provide a memorandum of legal authority is a waiver of the argument).

### III.    The Defendant Was Not Required to List Schiemann on Its Initial Disclosures

In the motion, the Plaintiff attempts to blame the Defendant for her failure to request the deposition of Ms. Schiemann, suggesting that the Defendant was required to identify Ms. Schiemann on its initial disclosures. Yet, the Plaintiff fails to recognize that Rule 26(a) only requires the Defendant to disclose those individuals "likely to have discoverable information . . . that the disclosing party may use to support its . . . defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a). Thus, the Defendant did not have an obligation to disclose Ms. Schiemann as it does not intend to use her to support its defenses, and the Plaintiff's suggestion that discovery should be reopened because the Defendant did not identify Ms. Schiemann on its initial disclosures is meritless. In fact, it was the Plaintiff, not the Defendant, who had an obligation to identify Ms. Schiemann. As set forth above, the Plaintiff has more the sufficient

information to identify Ms. Schiemann on her disclosures if she intended to use her to support her claims. The Plaintiff failed to do so.

## IV.     The Plaintiff Has Failed to Show Good Cause to Reopen Discovery.

While incorrectly titled as a motion to compel, in this motion, the Plaintiff seeks to reopen discovery and amend the scheduling order to extend discovery so that she can take the deposition of Makenzie Schiemann. The scheduling order established August 31, 2018, as the discovery deadline. (See Order (Dkt. No. 27)). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."

In order to establish good cause under Rule 16(b)(4), the Plaintiff must show that she exercised diligence in complying with the Court's Order, i.e. she must show that, despite her diligence, she could not sought this deposition prior to August 31, 2018. See Garrett v. Dep't of Corr. of Florida, 5:06CV400OC10GRJ, 2007 WL 5844122, at *1 (M.D. Fla. Oct. 1, 2007) (observing that the Eleventh Circuit requires a showing of due diligence to satisfy the good cause standard under Rule 16(b)(4)); Inman v. Richman Prop. Services, Inc., 3:13-CV-941-J-32MCR, 2014 WL 4639131, at *3 (M.D. Fla. Sept. 16, 2014) (providing that "Plaintiff must demonstrate good cause for modifying the CMSO under Rule 16(b)(4)"); HomeBingo Network, Inc. v. Cadillac Jack, Inc., Civil Action No. 05-0701-WS-B, 2006 WL 3469515, at *2 (S.D. Ala. Nov. 29, 2006) (citing Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)).

The lack of diligence can be the failure to act on information already known before the deadline to amend pleadings or the failure to discover that information before the deadline. See Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 & n.3 (11th Cir. 2009). As a result, "[i]f a plaintiff has all of the factual information upon which a proposed amendment is based and fails to diligently seek amendment, a district court acts within its discretion in finding that

8

such a lack of diligence precludes modification of its Scheduling Order and denies the request to amend." Butterworth v. Laboratory Corp. of Am. Holdings, Case No. 3:08-cv-411-J-34JRK, 2011 WL 13137954, at *5 (M.D. Fla. Oct. 26, 2011); see also Baker v. City of Safety Harbor, Case No. 8:07-cv-1120-T-23TGW, 2008 WL 11336627, at *2 (M.D. Fla. May 15, 2008) (concluding that the plaintiff's mistake of law or failure to sue the correct party was not good cause for an amendment under Rule 16(b)").

In this case, the Plaintiff does not address Rule 16(b) or attempt to set forth any accurate facts to justify her late filing. She contends that the production of an unredacted document gave her notice of the need to depose Ms. Schiemann. Specifically, she asserts:

> Plaintiff's initial knowledge of Ms. Schiemann's role and her involvement in this case did not give Plaintiff any cause to depose Ms. Schiemann. She was not known to have been involved in any official or direct manner with the investigation of Plaintiff's complaints against Mr. Thurston, determination of sanctions or remedial measures, or any other such issues in this case. . . . (All of the documents available to Plaintiff regarding Ms. Schiemann prior to the production of Item 43, contained benign information and none were authored by her.)

(Motion at 1-2). As demonstrated above, this statement is not accurate. As an initial matter, even Item No. 43 does not show that Ms. Schiemann was involved in the investigation of her complaint or the determination of sanctions or remedial measures. (See Exhibit G). The Defendant is without knowledge of the Plaintiff's meaning of "any other such issues in this case." However, to the extent that Ms. Schiemann had any role with respect to the Plaintiff, the Plaintiff was aware of it well before the close of discovery. Indeed, the exhibits to this response demonstrate the Plaintiff's knowledge.

The Plaintiff has known about Ms. Schiemann's involvement since before this litigation began. Based on the documents she provided to the University, the Plaintiff was aware that Ms. Schiemann told Ms. Deremiah that they were going to have to file a SRR report based on the

9

Plaintiff's conduct. (See Exhibit B). She knew that Ms. Schiemann had conferred with Jodi Adamchak and the consultant regarding this issue. (See id.). The Plaintiff knew that Ms. Schiemann had directed Ms. Deremiah to take action. (See id.). The Plaintiff also knew that Ms. Deremiah had spoken to Ms. Cutsinger and Ms. Schiemann was present for that conversation. (See id.). Further, the Plaintiff was aware that Ms. Schiemann spoke to Ms. Cutsinger directly without the advocate regarding Ms. Deremiah's submission of a conduct report. (See id.). The Plaintiff also knew that Ms. Deremiah had met with Ms. Schiemann shortly after the Plaintiff's disclosed her illegal recording to Ms. Deremiah, and that Ms. Schiemann was going to speak to a consultant and Ms. Adamchak on how to proceed. (See id.). Despite this knowledge, the Plaintiff did not seek Ms. Schiemann's deposition.

Additionally, the Plaintiff produced documents in this case on February 2, 2018, which further evidenced her knowledge of Ms. Schiemann and her role. From these documents, the Plaintiff knew that Ms. Deremiah had consulted with Ms. Schiemann regarding the Plaintiff's disclosure of her illegal recording. (See Exhibit C). The Plaintiff also knew that she spoke to Ms. Deremiah and Ms. Schiemann regarding Ms. Deremiah's obligation to file a report regarding the Plaintiff's conduct. (See id.). Ms. Schiemann spoke to the Plaintiff directly. (See id.). The Plaintiff also was aware of several conversations between Ms. Deremiah and Ms. Schiemann regarding how to proceed as it related to the conduct charges against the Plaintiff, and that Ms. Schiemann had directed Ms. Deremiah with respect to her conversations with the Plaintiff. (See id.). She did not seek to depose Ms. Schiemann.

The Plaintiff also was aware that she had elicited deposition testimony from Megan Deremiah on April 17, 2018, which specifically identified Ms. Schiemann and her role. (See Exhibit D). Part of this testimony elicited was Ms. Deremiah's understanding regarding the

sanctions and remedial process, which Ms. Deremiah said that she had because of information Ms. Schiemann had told her. (See id.). Ms. Deremiah also testified about her conversations with Ms. Schiemann and Ms. Schiemann's actions with respect to the Plaintiff's illegal recording and the student conduct process. (See id.). Yet, despite this knowledge, the Plaintiff still did not seek Ms. Schiemann's deposition. Moreover, the Defendant produced documents identifying Ms. Schiemann and relating to her role. The Plaintiff still did not request Ms. Schiemann's deposition. The Plaintiff elicited testimony from Ms. Coombes and Ms. Cutsinger related to Ms. Schiemann's role and sought documents related to Ms. Schiemann. (See Exhibit E; Exhibit F). But she still did not request Ms. Schiemann's deposition.

Prior to the close of discovery, the Plaintiff knew the extent of Ms. Schiemann's role – it was far more than some "benign" information as the Plaintiff now alleges – and she chose not to seek her deposition. Then, after the Defendant was required to produce an unredacted copy of one email, she now contends that this e-mail disclosed that the Plaintiff needs to take her deposition. If anything, it is this e-mail that discloses merely benign information wholly unrelated to her claim and is not a basis to reopen discovery in this case. As the Defendant addresses below, this e-mail did not disclose any new information that justifies reopening discovery.

However, despite apparently coming to that realization on September 25, 2018, the Plaintiff still delayed in bringing this motion. She waited until after the Defendant had filed a motion to amend the scheduling order to accommodate her deposition due to her inconsistent statements under oath and her refusal to disclose information and after the Court had ruled on the motion, granting it in part and establishing the schedule for the remaining deadlines in this case. Even then, the Plaintiff waited another 6 days to file this motion seeking to amend the scheduling order again.

As the foregoing demonstrates, she has exhibited a complete lack of diligence in pursuing this discovery. She certainly could have sought Ms. Schiemann's deposition prior to August 31, 2018, and failed to do so. Her delay in this case should not be rewarded by reopening discovery.

### V.   The E-mail Did Not Disclose Any New Information.

As set forth above, the Plaintiff attempts to blame her dilatory conduct on the production of one unredacted e-mail. This e-mail, however, did not disclose any new information that would justify this belated deposition request.

In the Motion, Plaintiff asserts:

> Plaintiff has alleged the Defendant took deliberate action to disrupt and damage her relationship with the victim advocate and deprive her of full access to that support resource. Prior to the disclosure of this email, Plaintiff had no ability to ascertain that such a circumstance existed, and that there was a material connection between these witnesses.

(Motion at 2-3).[2] There are number of problems with this assertion. First, in the Complaint, the Plaintiff alleged that "[t]he breach of confidentiality and retaliatory prosecution of Plaintiff by USF completely, and foreseeably, destroyed Plaintiff's trust in the victim advocate program, thereby depriving her of the support of that resource that is supposed to be an integral part of the Title IX victim support process." (Complaint (Dkt. No. 1) ¶ 50). Thus, her claim in this motion that she had "no ability to ascertain that such a circumstance existed" is nonsensical. She pled it in the Complaint. Under Rule 11, she not only had an "ability to ascertain that such a circumstance existed," she had an *obligation* to ascertain it *before* making this allegation. Therefore, the suggestion that the e-mail disclosed a new claim is completely unfounded.

Additionally, the e-mail does not support or relate to the Plaintiff's contention that the

---

[2] Notably, when the Defendant requested that the Plaintiff explain what relevant information she believes that Ms. Schiemann has, the Plaintiff did not provide this explanation. (See Exhibit A).

12

Defendant took a "deliberate action to disrupt and damage her relationship with the victim advocate." Instead, as the Court is aware, this e-mail references a discussion between Makenzie Schiemann and Jodi Adamchak regarding the role of a victim advocate within the university. (See Exhibit G). No action was taken with respect to the relationship between Ms. Deremiah and the Plaintiff as a result of this e-mail nor is any such action referenced in this e-mail. (See id.). In fact, as demonstrated by the documents produced by the Plaintiff in this case, Ms. Deremiah continued to support the Plaintiff after this e-mail exchange on April 18, 2017. (See Exhibit C).

Furthermore, the Court concluded in the motion to dismiss that the Plaintiff could proceed on a retaliation claim based on the code-of-conduct charge, not this assertion that she was deprived of the victim advocate resource. (See Order at 12-13). Specifically, the Court concluded: "Because Garrett alleges that USF charged her with a code-of-conduct violation in retaliation for complaining about USF's disposition of her complaint against Thurston, Garrett states a claim for retaliation." (Id.). It did not allow her to proceed on a retaliation claim in the Complaint based on this assertion. Thus, this assertion is not a basis to reopen discovery in this case.

Additionally, the Plaintiff's contention that, prior to this e-mail, she was unaware of the material connection between Jodi Adamchak and Makenzie Schiemann is not accurate. She was aware of it before she filed this lawsuit, and, as set forth above, subsequently and repeatedly made aware of it during discovery. The Plaintiff elected not to seek the deposition of Makenzie Schiemann, and now, after the close of discovery and after a motion to continue the deadlines, she files this motion for the first time.

For example, as set forth above, on July 13, 2017, the Plaintiff provided a copy of Megan Deremiah's notes from May 23, 2017, to the University during its conduct investigation of the Plaintiff. (See Exhibit B). The title of this note is "Consult w/Director." (Id.). It specifically

13

states: "After speaking with the consultant and Jodi Adamchak from general counsel, the CVA director called the advocate to let her know that we were going to have to file an SRR report against the client for recording the conversation." (Id.). As set forth above, to the extent that the Plaintiff claims she did not know who the CVA Director was, Megan Deremiah testified on April 17, 2018, that the director was Makenzie Schiemann. (See Exhibit D). Ms. Deremiah also testified about the conversations between Ms. Schiemann and Ms. Adamchak. (Id.). Therefore, the Plaintiff's contention that this email discloses any new information in order to reopen discovery and justify this deposition is completely without merit.

Finally, this e-mail does not disclose any relevant information regarding the claims in this case. Ms. Schiemann's role, as set forth in this e-mail, related to responding regarding the role of a victim advocate at the University. (See Exhibit G). The other e-mails in this chain relate to Megan Deremiah's actions and the Plaintiff's request to have Thurston removed from the academic program by the academic department. (Id.). Ms. Schiemann's interpretation as to the role of a victim advocate has no bearing on any claim in this case. There is no suggestion, let alone a good faith basis to suggest, that Ms. Garrett's request to have the psychology department exclude Mr. Thurston from the program as an academic decision was denied because Ms. Deremiah acted within or outside of her role as a victim's advocate. In fact, based on the documents that the University produced and Ms. Garrett received on April 12, 2017, prior to this one e-mail communication by Ms. Schiemann, Dean Cleveland-Roberts explained the precise basis for this decision, which was unrelated to Ms. Deremiah's role as a victim advocate. (See Exhibit H). To the extent that the Plaintiff now seeks to inquire about Ms. Garrett's attempt to have Mr. Thurston removed from the academic program by the psychology department, which is referenced in the e-mail, she already has deposed Megan Deremiah, Dr. Tammy Allen, Dr. Michael Braun, Crystal

Coombes, and Joanne Adamchak. Ms. Schiemann did not provide any input regarding Ms. Garrett's request to have Mr. Thurston dismissed from the program by the academic department or correspond with her directly regarding this decision. Thus, Ms. Schiemann's e-mail is not "clearly a part of the issues relevant to Plaintiff's claims," as the Plaintiff contends.

Nonetheless, even if the Plaintiff believes that Ms. Schiemann has other relevant information to her claims, the Plaintiff was aware of Ms. Schiemann's role and decide to wait until more than a month after the close of discovery and after the filing and resolution of the motion to continue the deadlines in this case to seek to reopen discovery and to take her deposition. As a result of her complete lack of diligence, the Plaintiff cannot establish good cause to amend the scheduling order and reopen discovery. See Inman, 2014 WL 4639131, at *3 (finding that "Plaintiff has not demonstrated good cause and excusable neglect for filing the Motion to Compel over a month after the discovery deadline and for modifying the Case Management and Scheduling Order"); Garrett, 2007 WL 5844122, at *1. Therefore, this motion must be denied.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the Defendant respectfully requests that the Court deny the Plaintiff's Motion to Compel Deposition of Makenzie Schiemann (Dkt. No. 67).

DATED this 11th day of October, 2018.

                                        Respectfully submitted,

                                        */s/ Thomas M. Gonzalez*
                                        Thomas M. Gonzalez
                                        Florida Bar No. 192341
                                        Sacha Dyson
                                        Florida Bar No. 509191
                                        Thompson, Sizemore, Gonzalez
                                        & Hearing, P.A.
                                        Street: 201 North Franklin Street, Suite 1600

       Tampa, Florida 33602
       Mail: Post Office Box 639
       Tampa, Florida 33601
       Telephone: 813-273-0050
       tgonzalez@tsghlaw.com
       sdyson@tsghlaw.com

       and

       Joanne M. Adamchak
       Florida Bar No. 943037
       Associate General Counsel
       Office of the General Counsel
       University of South Florida
       4202 E. Fowler Avenue, CGS 301
       Tampa, FL  33620-4301
       Telephone: 813-974-2131
       jadamcha@usf.edu
       Attorneys for the Defendant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this <u>11th</u> day of October, 2018, by CM/ECF electronic filing to the Clerk of Court and to the following:

Michael T. Dolce
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
mdolce@cohenmilstein.com
Attorney for the Plaintiff

       */s/ Thomas M. Gonzalez*
       Attorney